IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Curtis P. Robinson,             )      Civil Action No. 8:11-cv-03375-RMG-JDA

             Plaintiff,     )

                        )

       vs.                   )      **REPORT AND RECOMMENDATION**

                        )      **OF MAGISTRATE JUDGE**

Michael J. Astrue,          )

Commissioner of Social Security,  )

                        )

           Defendant.  )

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In July 2007, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of May 22, 2007. [R. 152–65.] These claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 93–112.] Plaintiff then requested a hearing before an administrative law judge ("ALJ") [R. 113–14],

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

and on February 8, 2010, ALJ E. Lee Morgan conducted a de novo hearing on Plaintiff's claims [R. 50–77].

The ALJ issued a decision on February 26, 2010, finding Plaintiff not disabled. [R. 36–45.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2011 and had not engaged in substantial gainful activity since May 22, 2007, the alleged onset date. [R. 38, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, and fibromyalgia. [R. 38, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of hypertension, pancreatitis, plantar fasciitis, blurry vision, and chronic obstructive pulmonary disease ("COPD"). [R. 41–43.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 38, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [R. 39, Finding 5.] Based on this RFC finding, at Step 4, the ALJ determined Plaintiff could perform his past relevant work as a convenience store manager, short order cook, cashier, and housekeeper. [R. 44, Finding 6.] On this basis, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from May 22, 2007 through the date of the decision, February 26, 2010. [R. 45, Finding 7.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Plaintiff requested Appeals Council review of the ALJ's decision [R. 14] and submitted additional evidence for consideration by the Council [R. 470–85], but the Council declined review [R. 1–6]. Plaintiff filed this action for judicial review on December 12, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is clearly erroneous in light of the testimony and medical evidence. [Doc. 15 at 10.] Specifically, Plaintiff argues the ALJ's RFC assessment is conclusory and does not contain adequate rationale or reference to supporting evidence as required by Social Security Ruling ("SSR") 96-8p. [*Id.* at 10–12.] Plaintiff further contends the ALJ erred by finding Plaintiff was capable of returning to his past relevant work and by failing to give weight to the opinion of his treating physician, Dr. Miller, regarding the severity of his impairment. [*Id.* at 12–16.] Finally, Plaintiff argues a proper RFC analysis would limit him to less than a full range of sedentary work, which would require an analysis at Step 5 of the sequential evaluation, and the vocational expert ("VE") testified such a RFC, which includes all of Plaintiff's actual limitations, would preclude all work. [*Id.* at 16–17.]

The Commissioner, on the other hand, contends the ALJ properly weighed the medical evidence and articulated good reasons for giving "no weight" to Dr. Miller's opinion. [Doc. 16 at 6–9.] Defendant also argues the ALJ properly determined Plaintiff's RFC and properly found Plaintiff capable of performing his past relevant work based on his RFC. [*Id.* at 9–11.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

4

for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand

5

was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can

8

find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule,

9

the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[7] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating

physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical

source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).

However, the ALJ is responsible for making the ultimate determination about whether a

claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a

claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a

consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the

regulations, however, the ALJ may determine that a consultative examination or other

medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

14

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

Circuit has rejected a rule which would require the claimant to demonstrate objective

evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and

ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...

15

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight Assigned to Treating Physician Opinion**

Plaintiff contends the ALJ erred by assigning no weight to the opinion of Plaintiff's treating physician, Dr. Miller. [Doc. 15 at 13–16.] Plaintiff argues the ALJ failed to evaluate Dr. Miller's opinion using the criteria of 20 C.F.R. §§ 404.1527 and 416.927, and the ALJ's failure to properly evaluate Dr. Miller's opinion amounts to more than harmless error because Dr. Miller's opinion is the only valid RFC assessment in the record and supports Plaintiff's position that he is incapable of working. [*Id.* at 15–16.] The Commissioner contends the ALJ properly assigned no weight to Dr. Miller's opinion and adequately supported his decision with specific reasons for assigning no weight to the opinion. [Doc. 16 at 7–8.] The Court agrees with the Commissioner.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the

physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an

18

> individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

Here, the ALJ considered the Listing 9.08 Diabetes Mellitus Questionnaire and the Restrictions Questionnaire completed by Dr. Miller but gave Dr. Miller's conclusions expressed in the questionnaires no weight.[8] The ALJ provided the following reasons for assigning no weight to the opinions contained in these questionnaires:

> Dr. Miller's conclusions are not supported by his treatment notes which on a rather consistent basis show normal physical examinations. Dr. Miller utilizes a check-list during his examinations of the claimant. This form has an "N," presumably for normal, and an "A," presumably for abnormal. At nearly every office visit, Dr. Miller has marked "N" in the rated categories. His conclusions are also not supported by the other evidence of record including treatment notes from Dr. Daniel[]s, the claimant's previous family practitioner, and from the extensive eye examination in August 2007. In addition, diagnostic testing, much of which has been ordered by Dr. Miller, has been normal or nearly normal. The record shows limited complaints from the claimant.

---

[8] In the Diabetes Mellitus Questionnaire, Dr. Miller indicated Plaintiff met the criteria of Listing 9.08. [*See* R. 434–35.] In the Restrictions Questionnaire, Dr. Miller indicated Plaintiff was restricted to less than the full range of sedentary work and would be unable to perform work activities due to pain and medications. [*See* R. 436–41.]

> Given the claimant's allegations of totally disabling symptoms,
> and Dr. Miller's extreme conclusions, one might expect to see
> some indication in the treatment records of restrictions placed
> on the claimant by a treating doctor. Yet a review of the record
> in this case reveals no restrictions recommended by any
> treating doctor.
>
> For these reasons, no weight has been given to Dr. Miller's
> conclusions *in the Diabetes Mellitus Questionnaire and the
> Restrictions Questionnaire*.

[R. 44 (emphasis added).]

As emphasized in the above quote, the ALJ did not discount all of Dr. Miller's opinions; the ALJ gave no weight to only two questionnaires Dr. Miller completed. Because the questionnaires addressed whether Plaintiff met a listing and Plaintiff's RFC, the ALJ was not required to give any special significance to the opinions expressed in these questionnaires. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). Thus, assigning no weight to the opinions was not inappropriate merely because the opinions were those of Plaintiff's treating physician.

Further, the ALJ provided several reasons for assigning no weight to the questionnaires, and the reasons are supported by substantial evidence. Although, as Plaintiff notes, blood testing ordered by Dr. Miller demonstrated that Plaintiff's blood sugars were never under control [*see, e.g.*, R. 399–433], which contradicts the ALJ's assertion that "diagnostic testing . . . has been normal or nearly normal" with respect to Plaintiff's blood sugar levels, Plaintiff has failed to point out anything in Dr. Miller's treatment notes or elsewhere in the record to support the conclusions Dr. Miller expressed in the questionnaires. Because the ALJ explained the weight he assigned to the questionnaires

20

with reasons that are supported by substantial evidence of record, the Court concludes the ALJ's decision as to Dr. Miller's opinions should be upheld.

**Residual Functional Capacity**

Plaintiff contends the ALJ's RFC assessment is inadequate because it merely contains a laundry list of the medical evidence and fails to explain how Plaintiff's severe impairments factored into the RFC assessment.  [Doc. 15 at 10–12.]  The Commissioner argues the ALJ's decision that Plaintiff was capable of performing light work was "a reasonable finding, based on an evaluation of the medical and testimonial evidence of record."  [Doc. 16 at 9.]  The Commissioner contends Plaintiff's challenge of the RFC assessment is not persuasive because Plaintiff failed to acknowledge the ALJ weighed and discussed the evidence of Plaintiff's various conditions and failed to acknowledge or challenge the ALJ's actual stated reasons for his findings.  [*Id.* at 9–10.]

The Administration has provided a definition of residual functional capacity ("RFC") and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.   Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional

21

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

> Additionally, the Administration has determined that in assessing RFC, the ALJ

> > must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id.* at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477.

Here, the ALJ considered Plaintiff's alleged conditions and symptoms, including diabetes mellitus, peripheral neuropathy, difficulty lifting and holding, hypertension, pancreatitis, vision problems, fatigue, difficulty concentrating/remembering, plantar fasciitis in the right foot, difficulty walking, joint pain, back pain, stomach pain, leg pain, asthma, fibromyalgia, drowsiness, and lightheadedness. [R. 39.] The ALJ also considered Plaintiff's testimony regarding his medications and activities of daily living, as well as a Function Report completed by Plaintiff's wife and Plaintiff's appearance and demeanor at the hearing. [R. 39–40.] Moreover, the ALJ considered the opinions of the state agency

22

medical consultants, reviewed the medical evidence, and stated conclusions that could be drawn from the evidence, or lack of evidence.  [R. 40–44.]

Upon review of the record, the ALJ's decision, and the parties' briefs, the Court finds Plaintiff's argument that the ALJ's RFC assessment is conclusory and requires additional explanation is without merit.  The ALJ determined Plaintiff's impairments limited his ability to perform work activities but did not preclude Plaintiff from performing light work.  [R. 38 (finding Plaintiff had severe impairments), 39 (finding Plaintiff retained the RFC to perform the full range of light work).]  The ALJ explained how the record evidence did not support a finding that Plaintiff was more limited than the ALJ determined in the RFC assessment.  [R. 39–44.]  While the ALJ did not explicitly state, for example, that Plaintiff's diabetes limited his ability to stand/walk to six hours out of an eight hour day, because Plaintiff has failed to direct the Court to evidence demonstrating Plaintiff was more limited than the ALJ determined, the Court concludes any error by the ALJ in failing to tie Plaintiff's impairments to specific limitations is harmless.  *See, e.g.*, *Perdue v. Astrue*, 2011 WL 6415490, at *17 (S.D.W. Va. Dec. 21, 2011) ("[C]ourts have applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand would be merely a waste of time and money. In general, remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses . . . [, which] constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." (internal quotation marks and citation omitted)); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an

23

administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)). Therefore, the Court concludes the ALJ's decision as to Plaintiff's RFC should be upheld.

**Past Relevant Work**

Plaintiff argues the ALJ erred in determining Plaintiff could perform his past relevant work as a convenience store manager, short order cook, cashier, and housekeeper because Plaintiff's impairments preclude him from performing light work and all of these jobs are at the light exertional level. [Doc. 15 at 12.] Further, Plaintiff contends the ALJ erred by summarily concluding Plaintiff could perform his past relevant work without providing specific findings or analysis regarding the physical and mental demands of these jobs. [*Id.* at 12–13.] The Commissioner contends Plaintiff's first assignment of error merely re-phrases Plaintiff's arguments regarding the ALJ's evaluation of the medical evidence and, thus, does not identify an error at Step 4. [Doc. 16 at 11–12.] Additionally, the Commissioner argues Plaintiff has failed to demonstrate any prejudice from the ALJ's failure to make a finding of fact regarding the physical and mental demands of Plaintiff's past work because the ALJ referred to the testimony of the vocational expert, who provided the *Dictionary of Occupational Titles* ("the DOT") numbers for the jobs and the DOT entries describe the physical and mental demands of the jobs.

With respect to Plaintiff's first argument, the Court agrees with the Commissioner. Plaintiff is essentially arguing the ALJ erred in determining Plaintiff retained the RFC to perform light work. Plaintiff's arguments regarding his RFC are addressed in the above

24

discussions of the ALJ's treatment of Dr. Miller's opinion and of the ALJ's RFC assessment, and the Court need not address Plaintiff's RFC arguments again here.

Upon review, the Court concludes the Plaintiff's second argument regarding the ALJ's past relevant work determination is without merit. At Step 4 of the sequential evaluation, the ALJ must assess the claimant's RFC and determine whether the claimant has an impairment that prevents past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In making this determination, the ALJ can utilize a vocational expert ("VE"), a vocational specialist, or other resources, such as the DOT, to determine whether a claimant can perform his or her past relevant work. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In this capacity, a VE

> may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id.* §§ 404.1560(b)(2), 416.960(b)(2). Additionally, the ALJ is permitted to rely on the general job categories of the DOT as presumptively descriptive of a claimant's prior work. *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)). The ALJ is under an affirmative duty to inquire into conflicts between the VE's testimony and the DOT. *See Haddock v. Apfel*, 196 F.3d 1084, 1087 (4th Cir. 1999) ("We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of non-disability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs

25

corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.").

Here, in determining Plaintiff could return to certain past relevant work, the ALJ explicitly relied on the VE's testimony that Plaintiff's past work as a convenience store manager, short order cook, cashier, and housekeeper was all at the light exertional level. [R. 44–45.]  At the hearing, the VE testified as to Plaintiff's past work, stating the DOT number, exertional level, skill level, and specific vocational preparation ("SVP")[9] number for each.  [R. 73–74.]  The VE testified Plaintiff's past work as a cashier, housekeeper, convenience store manager, and short order cook is classified as light work, and the VE also testified that Plaintiff described his work as a cardboard box laborer, highway maintenance laborer, and lumber stacker as light work, although those jobs are classified as medium.  [*Id.*]  The VE affirmed that her testimony was consistent with the DOT.  [R. 74.]

Therefore, the VE testified Plaintiff's past work was consistent with given DOT numbers, indicating that, if the ALJ determined Plaintiff could perform that past work, Plaintiff could perform the past work as it is generally performed.  *See* SSR 82-61, 1982 WL 31387, at *2 (1982) ("The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is *usually* performed in the national economy." (emphasis in original)).  The ALJ determined Plaintiff retained the RFC to perform light work, and the ALJ clearly relied on the VE's testimony, as he is

---

[9]Specific vocational preparation is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, part II, 1991 WL 688702.

entitled to do, 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) to determine Plaintiff could perform his past relevant work as a convenience store manager, short order cook, cashier, and housekeeper because this work is at the light exertional level [R. 44–45]. Thus, the Court concludes the ALJ's decision as to past relevant work is adequately explained and is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 23, 2013
Greenville, South Carolina